**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JEANNETTE DELGADO,

        Plaintiff,

                                Case No. 3:15-cv-211-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.
_____/

## OPINION AND ORDER[1]

### I.  Status

        Jeannette Delgado ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").  Plaintiff's alleged inability to work is a result of "right shoulder injury," "depression," and "h[igh] b[lood] p[ressure]."  Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed May 4, 2015, at 249 (emphasis and capitalization omitted).  On December 14, 2011, Plaintiff filed applications for DIB and SSI, alleging an onset disability date of January 12, 2010.  Tr. at 183-86 (DIB), 190-96 (SSI).  Plaintiff's applications were denied initially, see Tr. at 57, 59-68, 117-22 (DIB), 58, 69-78,123-28 (SSI), and upon reconsideration, see Tr. at 79, 81-92, 105, 132-37 (DIB), 80, 93-104, 106,138-42 (SSI).

        On June 3, 2013, an Administrative Law Judge ("ALJ") held a hearing during which the ALJ heard testimony from Plaintiff, who was represented by counsel; and a vocational

---

[1]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 11), filed May 4, 2015; Reference Order (Doc. No. 13), entered May 5, 2015.

expert ("VE").  Tr. at 39-56.  On July 3, 2013, the ALJ issued a Decision finding Plaintiff not disabled and denying Plaintiff's claims.  Tr. at 23-32.  Plaintiff then requested review by the Appeals Council, Tr. at 18, and submitted evidence to the Council in the form of a brief authored by her attorney representative and some additional medical evidence, Tr. at 5-6; see Tr. at 346-57 (brief), 913-25 (medical records of Claudio E. Vincenty, M.D.), 926-31 (updated medical records of Kasraeian Urology), 932-950 (updated medical records of Memorial Hospital).  On February 9, 2015, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner.  On February 26, 2015, Plaintiff commenced this action under 42 U.S.C. § 405(g) and § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises two issues on appeal: whether "the ALJ erred by not characterizing the Plaintiff's mental health impairment as 'severe'"; and whether "the ALJ erred by not placing appropriate weight on the opinions of the treating physicians."  Plaintiff's Memorandum in Support of Complaint (Doc. No. 16; "Pl.'s Mem."), filed May 6, 2015, at 6-11 (capitalization and emphasis omitted).  On September 4, 2015, Defendant responded by filing a Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem.").

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds the ALJ's Decision is due to be affirmed for the reasons explained herein.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 25-32.  At step one, the ALJ observed that Plaintiff "worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity."  Tr. at 25.  Accordingly, the ALJ determined Plaintiff "has not engaged in substantial gainful activity since January 12, 2010, the alleged onset date."  Tr. at 25 (emphasis and citations omitted).  At step two, the ALJ found Plaintiff "has the following severe impairments: degenerative disc disease (DDD) and right upper extremity arthropathy."  Tr. at 25 (emphasis and citations omitted).  The ALJ further found that Plaintiff's "medically determinable mental impairment of affective disorder does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and is therefore nonsevere."  Tr. at 26.  At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically

---

[2]      "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

-3-

equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." Tr. at 27 (emphasis and citations omitted).

> The ALJ determined Plaintiff has the following residual functional capacity ("RFC"):
>
> [Plaintiff can] perform sedentary work defined in 20 CFR [§§] 404.1567(a) and 416.967(a) except [Plaintiff] cannot lift more than 5 pounds; perform no climbing, crawling, or use [of] her right, dominant arm repetitively or for overhead reaching. [Plaintiff] cannot have concentrated exposure to temperature extremes, vibrations, or hazards such as dangerous machinery or unprotected heights.

Tr. at 27 (emphasis omitted). At step four, the ALJ found Plaintiff "is unable to perform any past relevant work" as a "Laborer, Stores," or "General Clerk." Tr. at 30 (some emphasis and citation omitted). At step five, after considering Plaintiff's age ("46 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 30 (emphasis and citations omitted), including representative occupations such as "Addresser," "Surveillance System Monitor," and "Call Out Operator," Tr. at 31. The ALJ concluded that Plaintiff "has not been under a disability . . . from January 12, 2010, through the date of th[e D]ecision." Tr. at 32 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting

Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

As indicated above, Plaintiff raises two issues on appeal.  She first challenges the ALJ's failure to find in step two of the sequential evaluation process  that her mental health impairment is a "severe" impairment.  Pl.'s Mem. at 6-8.  She next argues that the ALJ erred by not attributing appropriate weight to the opinions of her treating physicians.  Id. at 8-11.  A discussion follows.

## A.  Mental Health Impairment

Plaintiff contends the ALJ "erred by not characterizing [her] mental health impairment as 'severe.'"  Id. at 6.  Specifically, she argues that her treating psychiatrist, Hazem Herbly, M.D., diagnosed her with a major depressive disorder that was caused by her physical injury.  Id.  She complains that the ALJ ignored relevant statements in Dr. Herbly's records in which Dr. Herbly noted in February 2013 that Plaintiff's depression "increased severely, daily for

several weeks, she is anhedonic, stays home, isolates herself, sleep is disturbed, she feels

hopeless[,] helpless, wants to go to sleep and not wake up." Id. at 7 (quoting Tr. at 895).

Additionally, Plaintiff argues that Dr. Herbly's assessment in August 2012 indicated that

Plaintiff has a

> persistent state of depression that causes bursts of crying and sadness. She
> is also moderately limited relating to co-workers, the public and dealing with
> stressors. She would also be moderately limited to behaving in an emotionally
> stable manner and relating predictably in social situations.

Pl.'s Mem. at 6 (referring to Tr. at 620-23). She urges that these limitations should have

been included in the hypothetical to the VE. Pl.'s Mem. at 8.

Defendant responds that Plaintiff has the burden of demonstrating that her mental

health impairment is severe, and a review of her records and daily activities reveals Plaintiff

is not as limited as she claims. Def.'s Mem. at 5-7. Defendant also argues that "Plaintiff's

positive response to medication belies a finding that she has a severe mental impairment."

Id. at 7.

At step two of the sequential evaluation process, the ALJ must determine if a claimant

suffers from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). At this step, "[a]n

impairment can be considered as not severe only if it is a slight abnormality which has such

a minimal effect on the individual that it would not be expected to interfere with the

individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "[T]he

'severity' of a medically ascertained disability must be measured in terms of its effect upon

ability to work, and not simply in terms of deviation from purely medical standards of bodily

perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). In the

context of a Social Security disability benefits case, a condition is severe if it affects a

claimant's ability to maintain employment. See id. A claimant has the burden of proving that

her allegations of depression constitute a severe impairment. <u>Nigro v. Astrue</u>, No. 8:06-cv-2134-T-MAP, 2008 WL 360654, at *3 (M.D. Fla. Feb. 8, 2008) (unpublished).

When evaluating mental impairments, the Regulations direct the use of a "'special technique' dictated by the PRTF [Psychiatric Review Technique Form] for evaluating mental impairments." <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing 20 C.F.R. §§ 404.1520a-(a)).  The PRTF is further described in the introduction to section 12.00 of the listing of impairments.  <u>See</u> 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(A).  In the first step of the psychiatric review technique, it is determined whether a claimant has a medically determinable mental impairment using the criteria in "paragraph A" of the listing of impairments.  20 C.F.R. §§ 404.1520a(b)(1) and 416.920a(b)(1); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(A).

Next, if there is a medically determinable mental impairment, the degree of functional limitation resulting from such impairment is ascertained.  20 C.F.R. §§ 404.1520a(c) and 416.920a(c).  The degree of functional limitation resulting from a medically determinable mental impairment is ascertained by rating four "broad functional areas" in "paragraph B" of the listings:  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(c).  The first three broad functional areas are rated using a five-point scale:  none, mild, moderate, marked, and severe.  20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(c).  The fourth is rated using a four-point scale: none, one or two, three, four or

more.  20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4); 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00(c).[3]

After the degree of functional limitation resulting from the claimant's medically determinable mental impairment is rated, the severity of the mental impairment is established.  20 C.F.R. §§ 404.1520a(d) and 416.920a(d).  The four broad functional areas "are used to rate the severity of mental impairments at steps [two] and [three] of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4.  If the first three of the four broad functional areas are rated "none" or "mild," and the forth area is rated as "none," the Commissioner generally concludes that the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities."  20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).

Here, the ALJ found that Plaintiff's "medically determinable mental impairment of affective disorder does not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and is therefore nonsevere." Tr. at 26.  In her Decision, the ALJ noted:

> [I]n February 2013 Hazem Herbly, M.D. found [Plaintiff] to have depression secondary to a physical injury, but noted that she was alert and oriented with good memory and good judgment. [Plaintiff] was also coherent and logical, with no looseness of association or thought disorder.  In May 2013 Eduardo Sanchez, M.D. diagnosed [Plaintiff] with an adjustment disorder with depressed mood, which was of moderate intensity.  Dr. Sanchez opined that any disability was physical and not psychiatric in nature, and assigned a Global Assessment of Functioning (GAF) score of 75, which is suggestive of no more than slight impairment.

---

[3] There are also criteria under paragraph C for certain types of impairments.  See 20 C.F.R. Part 404, Subpart P, Appendix 1 §§ 12.00(A), 12.02(c), 12.04(c).  The criteria under paragraph C are not relevant here.

Tr. at 26 (citations omitted).  The ALJ then rated the four broad functional areas pursuant to the psychiatric review technique.  Tr. at 26.  In the first functional area, activities of daily living, the ALJ determined Plaintiff has "mild limitation."  Tr. at 26.  The ALJ based this finding on Plaintiff's testimony that she "is able to walk and exercise daily, read, and do some writing.  She does not drive, and her family does the housework and shopping.  She is able to use a computer, but requires help with typing."  Tr. at 26.  Substantial evidence supports the ALJ's finding in this regard, as Plaintiff reported to the Social Security Administration that she was able to perform some of these activities, Tr. at 263-66, 284, and Plaintiff testified that she was able to perform these activities, Tr. at 45-47.

In the second functional area, social functioning, the ALJ found Plaintiff has "mild limitation."  Tr. at 26.  The ALJ based this finding on the evidence that Plaintiff does not socialize or participate in activities.  Tr. at 26.  Plaintiff reported to the Social Security Administration that she does not go out with friends and does not socialize any more.  Tr. 267.  But, she also reported attending church weekly and reading the Sunday liturgy for her church.  Tr. 266.

In the third broad functional area, concentration, persistence, or pace, the ALJ found Plaintiff has "no limitation."  Tr. at 26.  The ALJ stated "[t]he evidence of record does not establish that [Plaintiff] has difficulty maintaining concentration, persistence, or pace as a result of mental limitations."  Tr. at 26.  The ALJ's conclusion is supported by substantial evidence as  Plaintiff was described as alert and oriented with good memory and judgment in her visits with Dr. Herbly in August 2012, February 2013, and November 2013.  Tr. at 894-96.  Additionally, the ALJ noted that Plaintiff testified that in 2010 she could have continued doing administrative work had she not moved.  Tr. at 27; see Tr. at 44.

In the fourth functional area, episodes of decompensation, the ALJ found Plaintiff has had "no episodes of decompensation which have been of extended duration." Tr. at 26. The ALJ's finding in this regard is supported by substantial evidence as there is no evidence in the record that Plaintiff has ever been hospitalized for any mental disorder. Plaintiff also testified that the medications she takes for her psychiatric complaints do help her. Tr. at 49.

In sum, the ALJ found that Plaintiff has no more than mild limitations in the first three functional areas and no episodes of decompensation in the fourth. For the foregoing reasons, these findings are supported by substantial evidence.

Based on these findings, the ALJ determined Plaintiff's alleged mental impairment of affective disorder is not severe. Tr. at 26. This determination is in accordance with the Regulations. See 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1) (stating, "[i]f we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is not severe . . ."). Accordingly, there was no error at step two.

Plaintiff next argues that because Dr. Herbly's assessment found her to be limited in her dealings with the public, co-workers and stressors, these limitations should have been included in the hypothetical to the VE. Pl.'s Mem. at 8; see Tr. at 620-23. In response, Defendant notes that Dr. Herbly referenced that Plaintiff was trying to find a job but had not been successful. Def.'s Mem. at 6 (referring to Tr. at 540). Additionally, Defendant cites Dr. Herbly's records that reported Plaintiff was "more active, enjoys socialization" and "volunteering at church." Def.'s Mem. at 6 (quoting Tr. at 539).

"[F]or a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v.

Barnhart, 284 F.3d, 1219, 1227 (11th Cir. 2002) (citing Jones v. Apfel, 190 F.3d 1224, 1229

(11th Cir. 1999)); see also Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir.

2011) (citation omitted).  An ALJ is not required to include findings in a hypothetical question

to the VE that the ALJ has found to be unsupported. See  Crawford, 363 F.3d at 1161.  Here,

the ALJ appropriately declined to include mental health impairments in her assessment of

Plaintiff's RFC and the corresponding hypothetical question to the VE.  The record supports

this decision.   For example, the ALJ noted:

> At the hearing, [Plaintiff] testified that she injured her right shoulder in January
> 2010. Since then [Plaintiff] has performed administrative work but left this
> position because she moved in July 2010. [Plaintiff] could have continued doing
> this work if she had not moved.  In a typical day [Plaintiff] walks and gets
> exercise for about 30 to 45 minutes with her daughter.  She reads books and
> writes with her left hand. . . .Her doctors want her to move her right hand more
> than she does.

Tr. at 27; see Tr. at 44-47.  Additionally, the ALJ noted Plaintiff "takes psychiatric medication

which is helpful."  Tr. at 28; see Tr. at 49.

Plaintiff relies on Dr. Herbly's August 2012 assessment to support her argument that

her mental impairment causes more than a minimal impact on her functioning.  Pl.'s Mem.

at 6.  In summarizing Dr. Herbly's assessment, Plaintiff states:

> He also opines that the plaintiff has a persistent state of depression that causes
> bursts of crying and sadness. [Plaintiff] is also moderately limited relating to co-
> workers, the public and dealing with stressors. [Plaintiff] would also be
> moderately limited to behaving in an emotionally stable manner and relating
> predictably in social situations.

Id. at 6 (referring to Tr. at 620-23).  Significantly, Dr. Herbly nor any other doctor stated that

Plaintiff was unable to work due to any mental health limitation.  Additionally, other treatment

records and Plaintiff's own testimony indicate her depression is not as limiting as she claims

such that it would impact her RFC.  Tr. at 44 (testifying that she could have continued to

work but for her move); 49 (testifying that her psychiatric medications help); 539 (indicating "significant improvement in mood" and she "is more active, enjoys socialization [and] volunteering at church); 540 ("has been volunteering with Lions Club at church"); 896 (indicating that "[d]epression is partially improved" and that she "does not feel helpless nor hopeless").  Also the report of psychiatric evaluation performed by Eduardo A. Sanchez, M.D. reveals Plaintiff "was an alert, well-oriented, pleasant and cooperative lady who was able to speak coherently, demonstrating the absence of a thinking disorder.  There were no perceptual abnormalities. [Plaintiff] had a depressed affect and came across despondent. There were no cognitive deficits or memory defects."  Tr. at 911.  Dr. Sanchez concluded that Plaintiff's disability was "from the pain and physical standpoint and not from the psychiatric standpoint."  Tr. at 912.

These medical records constitute substantial evidence to support the ALJ's decision not to include mental health impairments in the Plaintiff's RFC or in the hypothetical to the VE.  For the foregoing reasons, the Decision is due to be affirmed on this issue.

**B. Medical Opinions**

In her second argument, Plaintiff submits the ALJ "erred by not specifically identifying the 'significant weight' that was to be assigned to the examining and/or reviewing physicians."  Pl.'s Mem. at 11.  Specifically, she argues that "two of the doctors indicate that she would not be able to use her right upper extremity while another indicated 'limited use' and yet another specifically limited her pushing and pulling ability with her right upper extremity and no repetitive use."  Id.   Plaintiff claims that because the ALJ stated that "significant weight is given to each of the opinions set forth above" and yet failed to discuss

which limitations contained within those opinions were accepted, remand is warranted.  Id. at 10.

### 1. Opinions at Issue[4]

#### a. Sina Kasraeian, M.D.

Dr. Kasraeian saw Plaintiff on June 16, 2011, for re-evaluation of her right shoulder. Tr. at 536.  The record of exam on that date indicates Plaintiff was "in no acute distress[,] is alert and oriented times four[, and] is appropriate in mood, affect, and appearance."  Tr. at 536.  Physical exam of the right shoulder revealed "numbness is improving [and] swelling in the forearm is also approving."  Tr. at 536.  Dr. Kasraeian "strongly recommended that [Plaintiff] continue to follow up with Dr. Trescot . . . as [Plaintiff] appears to be benefitting from her plan and Dr. Trescot's plan appears to be very reasonable and appropriate."  Tr. at 536.[5]

On September 12, 2011, Dr. Kasraeian saw Plaintiff and noted that Plaintiff "was feeling well" and had previously gotten relief from a series of injections over the summer that helped her symptoms.  Tr. at 532.  Physical exam of the right shoulder revealed:

> Forward flexion is to 120 degrees, abduction to 90 degrees, external rotation to 25 degrees and internal rotation to L5.  In the supine position forward flexion is to 125 degrees, internal rotation to 45 degrees and external rotation to 20 degrees.

---

[4]      Plaintiff saw additional health care providers, but the opinions discussed in this section are primarily limited to those raised by Plaintiff in her memorandum.  See Pl.'s Mem. at 9-10.

[5]      In the history section of the doctor's notes, it is indicated that Plaintiff previously declined a follow-up appointment with Dr. Trescot and denied the medications prescribed by Dr. Trescot.  Tr. at 536.  A later note reveals that her lack of follow up may be due to needing approval from her worker's compensation carrier.  See Tr. at 533.

Tr. at 532.  On that same date, Dr. Kasraeian completed a "Patient Work Status Report" in which she checked on the form the following limitations: "Shoulder Sedentary [n]o use of affected extremity."  Tr. at 641.  The limitation contains no other detail or explanation.

In an October 24, 2011 exam, Plaintiff reported that she was continuing to "hav[e] a lot of significant pain in her shoulder at this time."  Tr. 530.  Dr. Kasraeian's treatment plan included continued physical therapy and "sedentary shoulder at this time."  Tr. at 531.

In her December 7, 2011 visit with Dr. Kasraeian, Plaintiff reported she was "working on getting approval for injection to the shoulder[, and she had] completed physical therapy with limited results in range of motion."  Tr. at 525.

In a January 18, 2012 exam, Plaintiff advised Dr. Kasraeian that "her pain is improved.  She still has pain and soreness around the shoulder including the AC joint but . . . that she is feeling better compared to her last appointment."  Tr. 551.  On February 29, 2012, Plaintiff saw Dr. Kasraeian and reported that she "recently underwent an intra-articular injection by Dr. Trescot from which she says she did get substantial relief for about a month; however, now her pain has recurred to the same level. . . ."  Tr. 549.  On physical exam, Plaintiff had "pain with extremes of range of motion but no pain with internal or external rotation."  Tr. at 549.

Plaintiff underwent physical therapy at Heartland Rehabilitation Services.  Tr. 633-759.  Dr. Kasraeian was one of the doctors who referred her to Heartland.  Tr. at 753. At an initial evaluation on February 2, 2011, Plaintiff rated her ability to perform daily activities and activities associated with her job at 50%.  Tr. at 741.  A review of the records of Heartland

Rehabilitation Services reveals Plaintiff reported some improvement and decrease in pain with therapy.  See, e.g., Tr. at 658, 675, 685-86, 687, 692, 694, 711.

> b.  Michael S. Scharf, M.D.

Plaintiff saw Dr. Scharf for a one-time consultative examination on December 12, 2011. Tr. 477-80.  In reviewing her history, Dr. Scharf noted Plaintiff received injections in her shoulder from Dr. Steinberg in March 2010, and "she did obtain some relief." Tr. at 477. He further noted that Plaintiff was discharged by Dr. Steinberg as "[h]er shoulder was presumably better" [but] "[h]er shoulder pain then recurred."  Tr. 477-78.  Physical examination indicated:

> exquisite tenderness about the deltoid muscle and over the top of her shoulder. Any attempt at range of motion of her right arm is met with resistance, because of shoulder pain.  She will not lift her arm overhead.  Her shoulder appears generally tight.  Her right arm is globally weak, which I feel is due to submaximal effort based on her pain.  Her reflexes are symmetrical bilateral. She does have good peripheral circulation.

Tr. at 479.  He opined: "Based on my examination, I do not feel that she is capable of working or certainly not using her right upper extremity."  Tr. at 479.

> c.  Robert Hurford, Jr., M.D.

Dr. Hurford performed a worker's compensation evaluation in August 2012.  Tr. 761-63.  His diagnosis of Plaintiff was "cervical spondylosis" and "frozen shoulder."  Tr. at 762. At that time, he found no functional limitations related to Plaintiff's neck and noted "[r]estrictions for shoulder to be addressed by shoulder surgeon[.]" Tr. at 763.  In February 2013, Dr. Hurford found Plaintiff "has limited use of right shoulder."  Tr. at 868.

> d.  Robert Whittier, M.D.

In May 2012, Dr. Whittier reviewed Plaintiff's medical records for the State agency. Based upon his review, he concluded that Plaintiff is limited to no repetitive use of her right upper extremity. Tr. at 100. He noted that Plaintiff obtained relief from injections. Tr. at 100. Additionally, he concluded that Plaintiff is limited in pushing, pulling and in reaching overhead on the right. Tr. at 100-101.

### 2.  Applicable Law

The Regulations establish a "hierarchy" among medical opinions[6] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."   20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(e).

---

[6]      "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

With regard to a treating physician or psychiatrist,[7] the Regulations instruct ALJs how to properly weigh such a medical opinion.  See 20 C.F.R. § 404.1527(c).  Because treating physicians or psychiatrists "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's or psychiatrist's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  Id.  When a treating physician's or psychiatrist's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician).  Id.

If an ALJ concludes the medical opinion of a treating physician or psychiatrist should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's or psychiatrist's own medical records.  Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v.

---

[7]        A treating physician or psychiatrist is a physician or psychiatrist who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

*Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. *See* *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986)); *see also* *Crawford*, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (citing *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," *Oldham*, 660 F.2d at 1084 (citation omitted); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," *Winschel*, 631 F.3d at 1179 (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.1987)); *see also* *Moore*, 405 F.3d at 1212; *Lewis*, 125 F.3d at 1440. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1179 (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

### 3. Analysis

Regarding the medical opinions of record, the ALJ wrote as follows:

[T]he medical opinions of record do not suggest that [Plaintiff] is incapable of performing work in accordance with the [RFC]. In a Patient Work Status Report completed in September 2011, Sina Kasraeian, M.D. indicated that [Plaintiff] should be limited to sedentary work with no use of her shoulder. In December 2011, Michael Scharf, M.D. examined [Plaintiff] and opined that she was not capable of performing work which required use of her right upper extremity. In May 2012, Claudio Vincinty, M.D. opined that [Plaintiff's] problems were inherent in her shoulder and were not the result of a cervical injury. Her symptoms were the result of her January 2010 injury, and she did not have reflex sympathetic dystrophy. A worker's compensation evaluation performed in August 2012 by Robert Hurford[,] Jr., M.D. found no cervical spine restrictions. In February 2013, Dr. Hurford[,] Jr. indicated that [Plaintiff] had limited use of her right shoulder.

In May 2012, Robert Whittier, M.D., reviewed [Plaintiff's] medical records for the State agency. Dr. Whittier opined that she had capabilities consistent with the performance of light exertional work, with pushing and pulling limitations for her right upper extremity, no repetitive use of her right upper extremity, and other postural, manipulative, and environmental limitations. These limitations have been incorporated into the [RFC] set forth above.

Significant weight is given to each of the opinions set forth above, as they are consistent with each other regarding [Plaintiff's] limitations and are consistent with the other objective medical evidence of record, including [Plaintiff's] treatment records. Taken as a whole, these opinions establish limitations as a result of [Plaintiff's] right shoulder impairment, but do not establish that this impairment precludes her from performing all basic work activities.

Tr. at 29-30 (citations omitted).

Plaintiff asserts that the ALJ "has an obligation to specifically define what evidence is accepted and the weight to be afforded that evidence," and she claims error in the ALJ's failure to do so in this case. Pl.'s Mem. at 11. Defendant responds that an ALJ's obligation is to "consider[] the totality of the evidence in arriving at a conclusion on the ultimate question of disability." Def.'s Mem. at 9 (citing 20 C.F.R. §§ 404.1527, 416.927). A claimant's RFC

is the most she can do despite her limitations and is based upon an evaluation of all the

relevant evidence in the record. See 20 C.F.R. §§ 404.150(e), 404.1545(a)(1), (a)(3); Social

Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1-2 (July 2, 1996).

> As noted above, the ALJ ultimately made the following RFC assessment:

> [Plaintiff can] perform sedentary work defined in 20 CFR [§§] 404.1567(a) and
> 416.967(a) except [Plaintiff] cannot lift more than 5 pounds; perform no
> climbing, crawling, or use [of] her right, dominant arm repetitively or for
> overhead reaching. [Plaintiff] cannot have concentrated exposure to
> temperature extremes, vibrations, or hazards such as dangerous machinery or
> unprotected heights.

Tr. at 27 (emphasis omitted).  In her Decision, the ALJ then went on to discuss Plaintiff's

testimony and the medical evidence of record.  Tr. at 27-28.  The ALJ determined that

Plaintiff's "medically determinable impairments could reasonably be expected to cause some

of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity,

persistence and limiting effects of these symptoms are not entirely credible."  Tr. at 28.  The

ALJ supported this credibility finding by noting the following medical evidence of record:

> Specifically, upon review of the medical evidence of record addressing
> [Plaintiff's] severe impairments, the undersigned notes that in January 2010,
> she injured her right shoulder at work and was assessed with shoulder strain.
> Subsequent evaluations in January and February of 2010 showed no deformity
> of the shoulder, with normal active range of motion without pain, normal
> sensation and deep tendon reflexes, and normal strength and pulses. An MRI
> dated in February 2010 showed tendonopathy of the right rotator cuff without
> evidence of tearing, and degenerative changes with mild impingement.  X-rays
> of the right shoulder from March 2010 showed bursitis, stiffness, and pain
> syndrome, and x-rays of the right wrist showed tenosynovitis and pain
> syndrome.  She subsequently underwent physical therapy, was prescribed
> medications, and was given cortisone injections.  In May 2011, there was no
> reported change in symptoms.  In October 2011, she reported decreased pain
> and increased movement, had responded well to therapy and exercise, and had
> accomplished all of her short- term goals. Notes from November 2011 indicate
> recurrent severe shoulder pain which increased with attempts to reach
> overhead . Records dated in 2011 and 2012 show multiple shoulder injections

-20-

being given with temporary or partial relief but ongoing pain. Notes from January 2012 indicate that she would be continued on "shoulder light duty". Notes from May 2012 indicate ongoing pain and stiffness in the right shoulder, especially at the acromioclavicular joint, with a recommendation of evaluation by a pain management specialist. An arthrogram of the shoulder in November 2012 showed mild to moderate distal infraspinatus tendinopathy with mild bursal surface degenerative fraying, and minimal retroclavicular degenerative changes. Records dated in February 2013 note numbness and pain in her right shoulder, and swelling and weakness in her right hand. She was noted as walking and exercising daily. On examination she had pain with passive range of motion and a stiff shoulder. Assessments included neck pain, cervical neuralgia, spondylosis without myelopathy, and pain in her shoulder. There is no indication of an inability to use the dominant hand.

Tr. 28 (citations omitted).

In summarizing the Decision, the ALJ stated that "[w]hile [Plaintiff's] impairments produce limitations, the objective evidence as a whole does not suggest that her impairments render her unable to perform any work, and the limitations that do exist are adequately accommodated within her [RFC]." Tr. 30. A review of the Decision reveals the ALJ considered the totality of the evidence in making her RFC finding and her Decision is supported by substantial evidence. With regard to the right shoulder injury, the ALJ reviewed the treating doctor's opinions and the other medical opinions of record, all of whom recognized a limitation of the Plaintiff's ability to use her right upper extremity. Tr. at 29. The ALJ gave significant weight to these opinions to the extent they were "consistent with the other objective medical evidence of record, including [Plaintiff's] treatment records." Tr. at 30. The ALJ considered the other medical evidence of record and Plaintiff's own testimony, Tr. 27-28, in determining that Plaintiff is not as limited as she claims. Thus, the ALJ properly considered the medical opinions, including Plaintiff's treating doctors, and gave them significant weight to the extent their opinions were consistent with the other objective medical

evidence of record including Plaintiff's treatment records and her own testimony. Accordingly, the ALJ's Decision is supported by substantial evidence and due to be affirmed.

## V.  Conclusion

After due consideration, it is

ORDERED:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on February 16, 2016.


JAMES R. KLINDT
United States Magistrate Judge

jde
Copies to:
Counsel of record